***NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-16-0000828
24-MAY-2021
10:59 AM
Dkt. 24 MO

SCWC-16-0000828

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---

KATE X. CUI,
Petitioner/Claimant-Appellant-Appellant,

vs.

STATE OF HAWAI'I, DEPARTMENT OF HEALTH,
Respondent/Employer-Appellee-Appellee, Self-Insured.
(Case No. AB 2011-206; DCD No. 2-09-40756)

---

KATE X. CUI,
Petitioner/Claimant-Appellant-Appellant,

vs.

STATE OF HAWAI'I, DEPARTMENT OF HEALTH,
Respondent/Employer-Appellee-Appellee, Self-Insured and
STATE OF HAWAI'I, DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT,
Respondent/Adjuster-Appellee-Appellee.
(Case No. AB 2013-232; DCD No. 2-12-40661)

---

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000828)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, McKenna, Wilson, and Eddins, JJ.)

Petitioner/Claimant-Appellant-Appellant Kate X. Cui (Cui) appeals from the Intermediate Court of Appeals' (ICA) January 2, 2020 Judgment on Appeal entered pursuant to its December 3, 2019 Memorandum Opinion. The ICA affirmed the October 26, 2016 Decision and Order of the State of Hawai'i Labor and Industrial Relations Appeals Board (the LIRAB).

Cui first applied for workers' compensation benefits for a mental injury that she sustained as a result of harassment by her supervisor in August 2009, while employed by Respondent/Employer-Appellee-Appellee the State of Hawai'i, Department of Health (Employer). Cui's original diagnosis was Adjustment Disorder with Mixed Anxiety and Depressed Mood, for which Employer accepted liability. Employer began making temporary disability payments, as ordered by the Director of Labor and Industrial Relations (the Director).

In March 2010, Employer terminated Cui's employment. In June 2010, Cui's doctor diagnosed her as suffering from Major Depressive Disorder. After Cui's diagnosis changed, the Director determined that her Major Depressive Disorder was caused by her termination and not her original stress injury. As a result, the Director terminated Cui's temporary disability payments.

Cui filed a new workers' compensation claim form for the alleged injury arising out of her termination, as well as an

2

amended claim form for her original claim, both listing Major Depressive Disorder as her injury. At Cui's request, the LIRAB remanded both claims to the Director to determine whether her Major Depressive Disorder was compensable under either claim. As relevant here, the Director deferred determination of whether Major Depressive Disorder was related to Cui's original stress injury because the Director could not locate a claim for Major Depressive Disorder in the record.

Cui appealed to the LIRAB, which affirmed the Director's decision deferring the determination of whether Cui's Major Depressive Disorder was related to her August 2009 injury. Based on the Director's deferral of the issue, the LIRAB concluded that it would be premature for it to decide the issue.

Cui appealed to the ICA, arguing inter alia, that her Major Depressive Disorder was the result of a single continuous injury which began in August 2009 and that the LIRAB abused its discretion by deferring determination of compensability. The ICA affirmed the LIRAB's decision and held that the LIRAB did not err by failing to address whether Cui's Major Depressive Disorder was related to her August 2009 injury because the Director deferred determination of the issue.

A review of the record shows that Cui filed an amended claim form for her August 2009 claim listing Major Depressive Disorder as an injury. It appears that the Director overlooked

3

Cui's amended claim form and erroneously deferred determination of the issue. In light of the circumstances presented here, the LIRAB abused its discretion by declining to determine whether Cui's Major Depressive Disorder was related to her August 2009 injury after the Director erroneously deferred determination. Having filed an amended workers' compensation claim form listing Major Depressive Disorder as an injury, Cui was entitled to receive a timely decision regarding whether her injury was compensable.

Accordingly, we vacate the ICA's January 2, 2020 Judgment on Appeal which affirmed the LIRAB's October 26, 2016 Decision and Order and remand to the LIRAB for further proceedings consistent with this opinion.

## I.   BACKGROUND

Cui was an epidemiologist with multiple advanced degrees who began working for Employer in 1998. On September 22, 2009, Cui filed a claim for workers' compensation benefits for a mental personal injury sustained on August 3, 2009, initiating Case No. AB 2011-206/DCD No. 2-09-40756 (WC Claim 1).[1]

---

[1]   Cui filed her claim using Form WC-5, entitled "Employee's Claim for Workers' Compensation Benefits." The date of accident listed on the Form WC-5 was originally noted as August 17, 2009, but was subsequently corrected to August 3, 2009 in the Director's April 22, 2010 decision.

4

On August 15, 2009, prior to filing WC Claim 1, Cui was examined by a psychiatrist (Dr. Ponce) after being referred by her primary care provider. Cui told Dr. Ponce that her work stress began in February 2009 when her new supervisor (Supervisor) gave Cui a negative performance review. Supervisor began meeting with Cui weekly and Cui described the weekly meetings to Dr. Ponce as "humiliating" and "harassment." Dr. Ponce diagnosed Cui with Adjustment Disorder with Mixed Anxiety and Depressed Mood, arising out of the course of her employment. Cui began treatment with Dr. Ponce and continued to work.

On January 7, 2010, Cui was evaluated by another psychiatrist (Dr. Steltzer) in an independent psychiatric evaluation. Dr. Steltzer confirmed Dr. Ponce's diagnosis.

By letter dated January 27, 2010, Adjuster-Appellee State of Hawaiʻi, Department of Human Resources Development (Adjuster) accepted liability for Cui's workers' compensation claim for stress in the form of Adjustment Disorder with Mixed Anxiety and Depressed Mood.

By letter dated February 8, 2010, Employer notified Cui that she would be terminated from her position for failure

to improve her performance (Termination Letter). Cui's employment was terminated effective March 25, 2010.[2]

## A.     Administrative Proceedings

On April 22, 2010, the Director issued a decision finding that Cui's Adjustment Disorder with Mixed Anxiety and Depressed Mood was a work injury, based on Employer's acceptance of liability. The Director ordered Employer to pay Cui weekly temporary total disability benefits (TTD) and reserved the matter of permanent disability for a later date. Neither party appealed this decision.

Following her termination, Cui continued to see Dr. Ponce for treatment and Dr. Ponce's treatment notes from these sessions demonstrate a substantial worsening of Cui's condition. In a June 1, 2010 treatment plan sent to Adjuster, Dr. Ponce changed his diagnosis to Major Depressive Disorder.[3] In an assessment dated September 7, 2010, Dr. Ponce opined that once Cui accepted the reality of her termination, she "decompensated and is now in a Major Depressive Disorder state[.]" In a progress report dated September 11, 2010, Dr. Ponce noted that Cui was "[v]ery depressed" and that her

---

[2]     Although the Termination Letter specified an effective date of February 22, 2010, Cui's termination was ultimately effective March 25, 2010, after she requested and attended a pre-discharge hearing.

[3]     Dr. Ponce neither informed Cui of the change in diagnosis nor altered her medication regimen based on his new diagnosis.

"Adjustment Disorder has slipped into a Major Depressive Disorder[.]"

Dr. Steltzer reviewed Cui's medical records at the request of Adjuster and summarized his findings in a report dated October 28, 2010.  Dr. Steltzer agreed with Dr. Ponce's diagnosis of Major Depressive Disorder, but disagreed with Dr. Ponce as to the cause.  Dr. Steltzer concluded that Cui's Major Depressive Disorder was caused by her termination, whereas Cui's initial Adjustment Disorder was directly related to her August 3, 2009 stress injury.  In a letter to Adjuster dated February 11, 2011, Dr. Steltzer restated his opinion that "[Cui's] major depression developed in response to being terminated."[4]

Adjuster, as Employer's representative, terminated Cui's TTD benefits for WC Claim 1 effective March 21, 2011, because it determined that Cui's current diagnosis of Major Depressive Disorder resulted from her March 25, 2010 termination and not her original August 3, 2009 injury.

Following a hearing, the Director issued a supplemental decision on July 1, 2011 concluding that Employer

_____

[4]    A third doctor, Dr. Joseph P. Rogers, performed an independent mental examination of Cui and agreed with Dr. Steltzer that "Cui's Major Depressive Disorder is no longer related to [WC Claim 1] with the understanding that her termination from employment [March 2010] caused a new injury and her prior Adjustment Disorder related to [WC Claim 1] was aggravated into the level of a Major Depressive Disorder by her termination[.]"  (Emphases added.)

7

was justified in terminating Cui's TTD benefits for WC Claim 1 based on the finding that Cui's Major Depressive Disorder was no longer the result of the WC Claim 1 injury. Cui timely appealed the Director's supplemental decision to the LIRAB.

On August 10, 2012, Cui moved to temporarily remand the case to the Director to rule on whether Cui's Major Depressive Disorder was a compensable injury. In an affidavit attached to Cui's motion to remand, Cui's counsel attested that he would file (1) an amended Form WC-5 for WC Claim 1 listing Major Depressive Disorder as an additional injury suffered by Cui as a result of the August 3, 2009 accident; and (2) a new Form WC-5 alleging that Cui's Major Depressive Disorder resulted from her March 25, 2010 termination to ensure that "the Director will have jurisdiction to decide all possible outcomes[.]" The LIRAB granted Cui's motion and remanded to the Director "to address compensability of a claim to be filed by [Cui] for Major Depressive Disorder and for determination of any other issue the Director deems appropriate."

On remand, Cui filed a Form WC-5 dated August 28, 2012 alleging that her Major Depressive Disorder resulted from her termination on March 25, 2010, initiating LIRAB Case No. AB 2013-232/DCD No. 2-12-40661 (WC Claim 2).

On May 1, 2013, Cui filed an "Amended" Form WC-5 (Amended Form WC-5) "[t]o add major depression as a diagnosis

8

and facilitate adjudication of [her] claims."  Cui's Amended Form WC-5 listed the "Date of Accident" as March 25, 2010 (the date she was terminated) and the "Date Disability Began" as August 3, 2009.[5]

On May 2, 2013, the Director heard the issues on remand.  Cui argued that her Major Depressive Disorder was compensable under WC Claim 1 because it was the result of a continuous injury which began on August 3, 2009, and in the alternative, that it was compensable as a new injury under WC Claim 2.  Employer argued that (1) the Director lacked jurisdiction to consider whether Cui's Major Depressive Disorder was compensable under WC Claim 1 because the record contained no written claim for Major Depressive Disorder related to the August 3, 2009 injury;[6] and (2) Cui's WC Claim 2 was time-barred because it was filed more than two years after her injury manifested.

On June 6, 2013, the Director issued two separate decisions as to whether Cui's Major Depressive Disorder was a

---

[5]    The record contains two Amended Forms WC-5, one that is typed and one that is partially typed with handwritten strikethroughs and insertions.  Both forms are dated May 1, 2013.

[6]    According to Cui, after Employer argued that WC Claim 1 was never amended to include a claim for Major Depressive Disorder, she filed a "Second Amended WC-5" on May 3, 2013.  However, both Amended Form WC-5s in the record are date-stamped May 1, 2013.

compensable injury.  As to WC Claim 1, the Director's decision

states in relevant part:

### FINDINGS OF FACT

The Director's Decision dated 4/22/2010 determined that [Cui]'s injury of 8/3/2009 consisted of Adjustment Disorder with Mixed Anxiety.[7]

The record affirms that a Major Depressive Disorder is a psychological condition separate and distinct from an Adjustment Disorder with Mixed Anxiety, <u>although it is possible for one to lead to the other</u>.

<u>The record is absent of a written claim from [Cui] for a Major Depressive Disorder</u>.

. . . .

### PRINCIPLES OF LAW

. . . .

Section 386-86, HRS,[8] and Hawaiʻi Supreme Court 89 H. 411,[9] provides that where no written claim was filed with

---

[7] The Director's June 6, 2013 Decision misstated Cui's full diagnosis, which was Adjustment Disorder with Mixed Anxiety <u>and Depressed Mood</u>. (Emphasis added.)

[8] Hawaiʻi Revised Statutes (HRS) § 386-86 (Supp. 2005) provides in relevant part:

(a)  <u>If a claim for compensation is made, the director shall</u> make such further investigation as deemed necessary and <u>render a decision within sixty days after the conclusion of the hearing</u> awarding or denying compensation, stating the findings of fact and conclusions of law.  The director may extend the due date for decisions for good cause provided all parties agree.  The decision shall be filed with the record of the proceedings and a copy of the decision shall be sent immediately to each party.
(b)  <u>The hearing shall be informal and shall afford the parties a full and fair opportunity to present the facts and evidence to be considered</u>.  Hearings under this section shall not be subject to chapter 91.  No stenographic or tape recording shall be allowed.

(Emphases added.)

[9] In <u>Potter v. Hawaii Newspaper Agency</u>, 89 Hawaiʻi 411, 423, 974 P.2d 51, 63 (1999), this court stated: "The plain language of [HRS § 386-86]
<span style="float:right">(continued . . .)</span>

the Director, the Director lacks the statutory authority to award or deny benefits to an injured employee.

### CONCLUSIONS OF LAW

The Director finds, based upon the above Findings of Fact and Principles of Law, the Director is unable to make a determination on the compensability of [Cui's] Major Depressive Disorder. <u>The Director credits an absence for said condition in the record</u>.

(Emphases added.)  Accordingly, the Director deferred determination of whether Cui's Major Depressive Disorder was a compensable injury under WC Claim 1.[10]

In the second written decision regarding WC Claim 2, the Director concluded that Cui suffered a compensable injury of Major Depressive Disorder as the result of her termination on March 25, 2010.  The Director waived the two-year statute of limitations set forth in HRS § 386-82 (1993),[11] "in light of the confusing nature of [Cui's] psychological situation having one

---

(. . . continued)

establishes that 'a claim for compensation' is a precondition of an order awarding or denying workers' compensation benefits.  <u>In the absence of a lawful claim</u>, the Director lacked the statutory authority either to award or to deny benefits to [the worker]."  (Emphasis added.)

[10]    The Director awarded Cui 8% permanent partial disability for WC Claim 1 based on her original diagnosis.

[11]    HRS § 386-82 (1993) provides in relevant part:

<u>The right to compensation under this chapter shall be barred unless a written claim therefor is made</u> to the director of labor and industrial relations (1) <u>within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest</u>[.]

(Emphases added.)

condition superimposed upon another with a delay in a corresponding psychological explanation for claimant."

Cui appealed the Director's June 6, 2013 Decision in WC Claim 1 and Employer and Adjuster (collectively Employer-Adjuster) appealed the Director's June 6, 2013 Decision in WC Claim 2. On October 21, 2013, the parties stipulated to consolidate the cases for WC Claim 1 and WC Claim 2.

The LIRAB heard the consolidated cases on August 24, 2014, and both Cui and Dr. Ponce testified. As relevant here, Dr. Ponce testified that (1) he saw Cui as a patient between August 15, 2009 and May 24, 2014, approximately thirty times total; (2) he initially diagnosed Cui with Adjustment Disorder with Mixed Anxiety and Depressed Mood; (3) from March to June 2010, after Cui was formally notified that her position was terminated, she began to decompensate and was in a "noticeable downward spiral," so the diagnosis "evolved" to Major Depressive Disorder; (4) Cui's "depression was present right from the start" and "gradual[ly] slip[ped] into . . . [M]ajor [D]epressive [D]isorder."

Both parties submitted post-hearing briefs to the LIRAB, wherein each noted that the record contained an Amended Form WC-5 listing Major Depressive Disorder as an additional injury Cui suffered as a result of WC Claim 1.

The LIRAB issued its October 26, 2016 Decision and Order (LIRAB Decision and Order) on the consolidated appeals. The LIRAB (1) affirmed the Director's decision in WC Claim 1 because it concluded that it would be premature for the LIRAB to determine whether Cui's Major Depressive Disorder was compensable under WC Claim 1 since the Director had deferred determination of whether Cui's Major Depressive Disorder related to her August 3, 2009 work injury; and (2) reversed the Director's decision in WC Claim 2 because it concluded that Cui's injury manifested by June 1, 2010 and was barred by the two-year statute of limitations set forth in HRS § 386-82.

B.   ICA Proceedings

Cui appealed to the ICA.  On appeal, Cui argued that her Major Depressive Disorder was compensable under WC Claim 2 and that her claim was timely filed because Cui did not know of the probable compensable character of her injury before Dr. Steltzer's February 11, 2011 opinion.  In the alternative, Cui argued that her Major Depressive Disorder was compensable under WC Claim 1 because it was the result of a single continuous injury which began on August 3, 2009 and that the LIRAB abused its discretion by deferring determination of compensability.

In its answering brief, Employer-Adjuster repeated its arguments that Cui's WC Claim 2 was time-barred because Cui

filed the claim more than two years after she "should have recognized the nature and probable compensable character of her major depressive disorder[.]"  Regarding the LIRAB's decision to defer determination of whether Cui's Major Depressive Disorder was compensable under WC Claim 1, Employer-Adjuster argued that because the Director had not yet made a determination, it was within the LIRAB's discretion to decline to make a determination.  Employer-Adjuster cited § 12-47-20 of the Labor and Industrial Relations Appeal Board Rules of Practice and Procedure (LAB Rules) which states: "The board may decline to hear and determine any issue which the director in the decision on appeal did not decide or left for future determination."

The ICA affirmed the LIRAB Decision and Order.  First, the ICA concluded that the LIRAB did not err in concluding that Cui's WC Claim 2 was time-barred.  Next, the ICA considered whether the LIRAB abused its discretion by deferring determination of whether Cui's Major Depressive Disorder was compensable under WC Claim 1.  The ICA noted that (1) the Director conducted a hearing on the issue of compensability of Cui's Major Depressive Disorder on May 2, 2013; (2) the parties agreed that Cui filed an Amended Form WC-5 on May 3, 2013;[12] and

---

[12]     Although the ICA noted that there were two Amended Forms WC-5 in the record date-stamped May 1, 2013, the ICA inferred that both of these were filed under LIRAB Case No. AB 2013-232/DCD No. 2-12-40661 (WC Claim 2).

(continued . . .)

(3) the Director's June 6, 2013 Decision in WC Claim 1 deferred determination of the issue of compensability based on the alleged absence of an Amended Form WC-5 for Major Depressive Disorder.  Citing Hawai'i Administrative Rules (HAR) § 12-47-20[13] and LAB Rules § 12-47-20, the ICA concluded that the LIRAB did not abuse its discretion by failing to address whether Cui's Major Depressive Disorder was compensable under WC Claim 1 because the Director had not yet made a determination.  In light of the fact that both the Director and the LIRAB deferred determination, the ICA further concluded that it was unable to review Cui's claim that her Major Depressive Disorder was the result of a single continuous injury dating back to August 3, 2009.

## II.   STANDARDS OF REVIEW

### A.   Appeals from Agency Determinations Relating to Workers' Compensation

> Appellate review of the LIRAB's decision is governed by HRS § 91-14(g) (1993), which provides that:
>
> > Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may

---

(. . . continued)

Despite the fact that the ICA was unable to locate an Amended Form WC-5 dated May 3, 2013 in the record, it credited as true the parties' assertions in briefing that an Amended Form WC-5 for WC Claim 1 was filed on May 3, 2013.

[13]    The language of HAR § 12-47-20 is identical to LAB Rules § 12-47-20. Both rules state: "The board may decline to hear and determine any issue which the director in the decision on appeal did not decide or left for future determination."

reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tauese v. State, Dep't of Labor & Indus. Relations, 113 Hawaiʻi 1, 25, 147 P.3d 785, 809 (2006) (quotation marks and citations omitted).

The LIRAB's conclusions of law are reviewed de novo, under the right/wrong standard. Id. Its findings of fact "are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record." Id. (quoting Poe v. Hawaiʻi Labor Relations Bd., 87 Hawaiʻi 191, 195, 953 P.2d 569, 573 (1998)) (quotation marks omitted).

Van Ness v. State, Dep't of Educ., 131 Hawaiʻi 545, 557–58, 319 P.3d 464, 476–77 (2014), as corrected (Feb. 4, 2014) (internal citations corrected).

## B.    Interpretation of Agency Rules

General principles of statutory construction apply in interpreting administrative rules. As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning. While an agency's interpretation of its own rules is generally entitled to deference, this court does not defer to agency interpretations that are plainly erroneous or inconsistent with the underlying legislative purpose.

Liberty Dialysis-Hawaii, LLC v. Rainbow Dialysis, LLC, 130

16

Hawaiʻi 95, 103, 306 P.3d 140, 148 (2013) (internal quotation marks and citation omitted).

### III. DISCUSSION

On certiorari, we consider whether the ICA erred in affirming the LIRAB's Decision and Order. Because we conclude that the LIRAB abused its discretion by deferring determination of whether Cui's Major Depressive Disorder was compensable under WC Claim 1, we need not reach the issue of whether WC Claim 2 was untimely.

Cui filed a claim for Major Depressive Disorder under WC Claim 1[14] and the Director was statutorily obligated to determine whether her injury was compensable under that claim within sixty days after the hearing.[15] Yet, in the Director's June 6, 2013 Decision, the Director misstated Cui's original

---

[14] On August 16, 2012, the Board remanded to the Director "to address compensability of a claim to be filed by [Cui] for Major Depressive Disorder and for determination of any other issue the Director deems appropriate." On August 28, 2012, Cui filed a new claim form alleging that her Major Depressive Disorder resulted from her termination on March 25, 2010, initiating WC Claim 2. On May 1, 2013, Cui filed Amended Form WC-5 for her WC Claim 1 adding Major Depressive Disorder.

[15] HRS § 386-86 provides in relevant part:

> (a) If a claim for compensation is made, the director shall make such further investigation as deemed necessary and render a decision within sixty days after the conclusion of the hearing awarding or denying compensation, stating the findings of fact and conclusions of law. . . .
> (b) The hearing shall be informal and shall afford the parties a full and fair opportunity to present the facts and evidence to be considered.

(Emphases added.)

diagnosis as "Adjustment Disorder with Mixed Anxiety," rather than "Adjustment Disorder with Mixed Anxiety and Depressed Mood[,]" and found that "[t]he record is absent of a written claim from claimant for a Major Depressive Disorder." (Emphasis added.) The Director cited HRS § 386-32(a) and Potter, 89 Hawai'i 411, 974 P.2d 51, for the proposition that "where no written claim was filed with the Director, the Director lacks the statutory authority to award or deny benefits to an injured employee."[16] Based on the purported "absence of a written claim for said condition in the record[]" of WC Claim 1, the Director concluded as a matter of law that "the Director is unable to make a determination on the compensability of [Cui's] Major Depressive Disorder."[17]

---

[16] The Director's reliance on Potter to defer determination of compensability was misplaced. In Potter, this court considered whether a claim form filed by an employer on behalf of an injured employee, without the employee's authorization, could be construed as a valid claim under HRS chapter 386. 89 Hawai'i at 422-23, 974 P.2d at 62-63. We concluded that an employer's report of an industrial injury is not a lawful claim for workers' compensation and that "[i]n the absence of a lawful claim, the Director lacked the statutory authority either to award or to deny benefits to [the employee]." Id. at 423, 974 P.2d at 63.

Here, the record contains both Cui's original Form WC-5 listing Adjustment Disorder with Mixed Anxiety and Depressed Mood and her Amended Form WC-5, adding Major Depressive Disorder as an injury. (Emphasis added.) Thus, even if the Director overlooked Cui's Amended Form WC-5, this was not like Potter in which "no lawful claim for workers' compensation benefits was filed with the Director[.]" See id.

[17] Nor did the purported lack of a written claim for Major Depressive Disorder for WC Claim 1 preclude the Director from making a declaratory determination that Cui would be entitled to workers' compensation benefits for WC Claim 1 if she filed an amended claim form. In Potter, we reiterated the general principle that the Director can make declaratory rulings: "Unquestionably, the Director may issue declaratory rulings concerning

(continued . . .)

"The plain language of [HRS § 386-86] establishes that 'a claim for compensation' is a precondition of an order awarding or denying workers' compensation benefits. In the absence of a lawful claim, the Director lack[s] the statutory authority either to award or to deny benefits to [an applicant]." Potter, 89 Hawaiʻi at 423, 974 P.2d at 63. Here, the record on appeal contains an Amended Form WC-5 dated May 1, 2013 listing Major Depressive Disorder as an injury. Thus, the precondition for "a claim for compensation" was met, see id., and the Director's finding that the Director lacked statutory authority to determine the compensability of Cui's Major Depressive Disorder under WC Claim 1 was clearly erroneous.

Based on the Director's decision to defer determination, the LIRAB concluded that it would be "premature" for it to determine whether Cui's Major Depressive Disorder was compensable under WC Claim 1. The LIRAB cited no authority for its own deferral of the issue and failed to acknowledge that Cui actually filed an Amended Form WC-5, despite the fact that both parties referred to the Amended Form WC-5 in their briefs.

_____

(. . . continued)

whether, in a specific set of circumstances, a claimant would be entitled to workers' compensation benefits upon the bringing of a lawful claim." 89 Hawaiʻi at 423, 974 P.2d at 63.

Here, the LIRAB exercised its discretion when it declined to address the issue of whether Cui's Major Depressive Disorder was related to WC Claim 1.  Accordingly, this court reviews the LIRAB's decision to defer determination of the issue reserved by the Director for abuse of discretion.  See Van Ness, 131 Hawaiʻi at 558, 319 P.3d at 477.

> The standard of review for administrative agencies therefore consists of two parts: first, an analysis of whether the legislature empowered the agency with discretion to make a particular determination; and second, if the agency's determination was within its realm of discretion, whether the agency abused that discretion (or whether the agency's action was otherwise "arbitrary, or capricious, or characterized by ... [a] clearly unwarranted exercise of discretion[.]"  HRS § 91-14(g)(6)).  If an agency determination is not within its realm of discretion (as defined by the legislature), then the agency's determination is not entitled to the deferential "abuse of discretion" standard of review.  If, however, the agency acts within its realm of discretion, then its determination will not be overturned unless the agency has abused its discretion.

Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 417, 91 P.3d 494, 499 (2004), as corrected (July 14, 2004) (internal citation omitted) (emphasis added).  Both HAR § 12-47-20 and LAB Rules § 12-47-20 provide that "[t]he board may decline to hear and determine any issue which the director in the decision on appeal did not decide or left for future determination."  The authorizing statute for both rules is HRS § 371-4 (2015), which states in relevant part that "[t]he board shall have power to decide appeals from decisions and orders of the director of labor and industrial relations issued under the workers' compensation law[.]"  Thus, the LIRAB was empowered by the

Legislature to decline to determine whether Cui's Major Depressive Disorder was compensable under WC Claim 1 because the Director had yet to render a decision on compensability.

However, as previously stated, the Director's decision to defer determination of the issue based on the purported absence of an Amended Form WC-5 was clearly erroneous. The record on appeal to the LIRAB contained Cui's Amended Form WC-5.[18] Moreover, because the LIRAB conducted a hearing on the consolidated cases and heard testimony from Cui and Dr. Ponce, the LIRAB had the benefit of additional evidence that was not before the Director. By enacting HRS § 386-86, the Legislature mandated that workers' compensation claimants would receive a timely decision on the merits of their claims. See HRS § 386-86(a) ("If a claim for compensation is made, the director shall . . . render a decision within sixty days after the conclusion of the hearing awarding or denying compensation, stating the findings of fact and conclusions of law."). Yet here, after holding a hearing on Cui's consolidated claims to determine the issue of compensability, the LIRAB either

---

[18]    We also note that the Form WC-5 is only two-pages long and was unlikely to provide the Director with additional information to make a determination regarding compensability, considering that the record already contained voluminous medical and psychiatric records which documented Cui's condition and treatment.

overlooked or ignored Cui's Amended Form WC-5 and deferred determination of the issue.

In light of the circumstances of this case and the statutory mandate that claimants receive a decision within sixty days of a hearing, see HRS § 386-86(a), we conclude that the LIRAB abused its discretion by deferring determination of whether Cui's Major Depressive Disorder was compensable under WC Claim 1.

On appeal, the ICA held that the LIRAB did not err by deferring determination because HAR § 12-47-20 and LAB Rules § 12-47-20 permit the LIRAB to "decline to hear and determine any issue which the director in the decision on appeal did not decide or left for future determination." However, here, the literal application of this rule "produces an absurd [and] unjust result," see Liberty Dialysis-Hawaii, 130 Hawai'i at 103, 306 P.3d at 148, because it would permit the LIRAB to defer determination of the issue based on the Director's erroneous finding that Cui failed to file an Amended Form WC-5. Moreover, the ICA found Cui's Amended Form WC-5 in the record, yet still concluded that the LIRAB did not err in deferring determination of the issue. As a result, the ICA erred by affirming the LIRAB Decision and Order because the LIRAB abused its discretion by declining to make a determination on whether Cui's Major Depressive Disorder was compensable under WC Claim 1.

22

Accordingly, we remand to the LIRAB for further proceedings to determine whether Cui's Major Depressive Disorder was compensable under WC Claim 1 because it is related to her original injury.[19]

## IV.   CONCLUSION

For the foregoing reasons, we vacate the ICA's January 2, 2020 Judgment on Appeal which affirmed the LIRAB's October 26, 2016 Decision and Order and remand to the LIRAB for further proceedings consistent with this opinion.

DATED:   Honolulu, Hawai'i, May 24, 2021.

Lowell K.Y. Chun-Hoon
and Rosalyn G. Payen
for petitioner

Shawn L.M. Benton for
respondent employer-appellee-
appellee, self-insured State
of Hawai'i, Department of
Health and respondent adjuster-
appellee-appellee State of
Hawai'i, Department of Human
Resources Development

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins



---

[19]    As the ICA correctly noted, there is no decision "to review Cui's contention that this entire matter arose from the August 3, 2009 injury and should be treated as a single injury." However, the record does seem to support Cui's argument that her mental impairment should be treated as a single industrial injury dating back to WC Claim 1. Dr. Ponce, Cui's treating psychiatrist who saw her more than thirty times, has consistently opined that Cui's Major Depressive Disorder was related to her original stress injury and not caused by her March 25, 2010 termination. Additionally, the most severe manifestation of Cui's psychiatric disorder occurred in April 2009 when Cui engaged in self-harm — which was the original stress injury that Cui sought treatment for. Thus, the record supports Cui's argument that her mental impairment should be treated as a single industrial injury dating back to WC Claim 1.